PONNUSWAMY NATARAJAN, M.D.,

     **Plaintiff,**

     **v.**                       Civil No. 8:04-cv-2612-T-17TGW

**THE PAUL REVERE LIFE INSURANCE**
**COMPANY, UNUM PROVIDENT**
**CORPORATION a/k/a THE UNUM**
**GROUP,**

     **Defendants.**
_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

     This cause is before the Court on Defendants' Motion for Summary Judgment (Doc. 143), Plaintiff's Motion for Summary Judgment as to Court One (Doc. 144), and responses thereto (Doc. 152, 153). For the reasons set forth below, Defendants' Motion for Summary Judgment is **GRANTED IN PART**, as to Count Seven of the Second Amended Complaint, and **DENIED IN PART**, as to all other counts. Plaintiff's Motion for Summary Judgment as to Count One is **DENIED**.

## PROCEDURAL HISTORY

     Plaintiff filed this action on December 1, 2004, against The Paul Revere Life Insurance Company, the Unum Life Insurance Company, and Unum Provident Corporation (a/k/a Unum Group) for failing to pay total disability benefits on several long-term, own-occupation,

professional disability insurance plans Plaintiff had purchased to protect the income from his cardiology practice (Doc. 1). In his Second Amended Complaint (Doc. 72), filed December 5, 2008, Plaintiff alleges nine counts of misconduct by his insurers, the Defendants, throughout the claims settlement process. These include: (1) breach of contract, (2), fraud as to omissions regarding the nature and quality of the policy purchased, (3) fraud as to the medical billing code analysis used by defendants to analyze the claim, (4) fraud as to the appeal process with which Plaintiff appealed the denial of his total disability claim, (5) fraud as to various statements made by Defendants in clarifying the terms of the policy, (6) fraud as to the re-assessment process for reviewing appeals decisions that had upheld the denial of benefits to Plaintiff, (7) racketeering, in violation of 18 U.S.C. § 1512, a Federal RICO statute, (8) unlawful investment of racketeering income in violation of 18 U.S.C. § 1961(a), a Federal RICO statute, and (9) unlawful implementation of a scheme affecting foreign commerce in violation of 18 U.S.C. § 1961 and 18 U.S.C. § 1962(b).

On January 19, 2010, both Defendants (Doc. 143) and Plaintiff (Doc. 144) filed Motions for Summary Judgment. Both Plaintiff (Doc. 152) and Defendants (Doc. 153) filed Responses in Opposition to the respective Motions for Summary Judgment on February 9, 2010. On March 4, 2010, Plaintiff filed the Affidavit of Geoffrey G. Simon in Support of Plaintiff's Motion for Summary Judgment as to Count One of the Second Amended Complaint (Doc. 159). On March 5, Plaintiff filed the same Affidavit of Geoffrey G. Simon in opposition to Defendant's Motion for Summary Judgment (Doc. 160). On March 8, 2010, Defendants filed a Motion to Strike both affidavits (Doc. 162). By order dated June 1, 2010 (Doc. 168), this Court granted Plaintiff's Motion to Strike in part, as to the affidavit filed in support of Plaintiff's Motion for Summary

Judgment, and denied the Motion to Strike in part, as to the affidavit filed in opposition to Defendants' Motion for Summary Judgment. Having decided the Motion to Strike, this Court can now decide Defendants' and Plaintiff's Cross-Motions for Summary Judgment (Doc. 143, 144).

## STATEMENT OF FACTS

The following facts are submitted by the parties, in support and/or in opposition to, their respective motions for summary judgment. The Court recognizes these as "facts" only in regard to resolution of the pending motion.

Plaintiff, Ponnuswamy Natarajan, M.D., is a board certified cardiologist operating primarily out of Sarasota in the State of Florida. Defendants, The Paul Revere Life Insurance Company and Unum Provident Corporation (a/k/a Unum Group), are foreign corporations operating principally in Maine and Tennessee (Doc. 72). Plaintiff alleges an amount in controversy in excess of $75,000.00, and diversity jurisdiction is therefore proper pursuant to 18 U.S.C. § 1332.

Beginning in or about 1977, Plaintiff purchased a long-term, non-cancellable "own occupation" disability insurance policy from Defendants. Plaintiff purchased additional coverage in later years. The specific policy that forms the basis for the instant litigation is PRLSP000006-00031, signed by the Plaintiff on March 4, 1987 (Doc. 143, Ex. 1). That same year, Plaintiff opened the first cardiac catheterization laboratory in the city of Venice, Florida. Following the adoption of interventional cardiology as a separate and distinct specialty by the American Board

of Medical Specialties in 1999, Plaintiff became board certified in interventional cardiology in the year 2001. (Doc. 144, Ex. 8, 10).

In or around the year 2000, Plaintiff developed severe arthritic degeneration of his hands and consequently lost the ability to perform surgeries (Doc. 152, Ex. 3). As a result of this condition, Plaintiff began to reduce the amount of interventional procedures he conducted, completing 140 in the year 2000, 93 in 2001, and only 28 in 2002 (Doc. 144, Ex. 18). Generally speaking, a physician must complete 75 interventional procedures in a given year in order to be categorically deemed an interventional cardiologist (Doc. 144, Ex. 16). By letter dated July 25, 2002, Plaintiff notified Defendants he was disabled and unable to perform the duties of his occupation, and on September 4, 2002, Plaintiff officially filed the claim upon which the extant litigation is based (Doc. 152, Ex. 33). In a statement dated August 3, 2002, Plaintiff's physician had restricted Plaintiff from "perform[ing] catheterizations, angioplasties, administer[ing] injections, perform[ing] patient examinations, carry[ing] heavy weights or perform[ing] any other duties that would manipulate or aggravate affected joints and muscles" (Doc. 144, Ex. 24). However, because Plaintiff's physician actually certified these restrictions to be *retroactive* to July 17, 2000, there is some dispute between the parties as to the exact date of disability (with Plaintiff asserting the claim should be assessed from the year 2000 and defendants apparently believing that 2002 is the proper point of reference from which to consider Plaintiff's claim).

Defendants' claims investigator, after speaking by telephone with Plaintiff, initially determined that Plaintiff was only partially disabled and explained that the Plaintiff might be eligible for residual disability benefits, but not total disability benefits (Doc. 143, Ex. 11). By letter dated October 23, 2002, Plaintiff advised Defendants through his attorney that he was

seeking total disability benefits because, due to his disability and his inability to manipulate his thumbs, he was no longer able to perform invasive or interventional procedures (Doc. 152, Ex. 28). Essentially, Plaintiff asserts that he was an invasive/interventional cardiologist at the time of his disability and that, while he continues to be able to perform the general duties of a cardiologist, he is no longer able to carry out the duties of his specialty (invasive/interventional cardiology). Therefore, according to Plaintiff, as per his policy with Defendants, he is entitled to total disability benefits.

The disability policy in question provides for "Total Disability" benefits when the insured, due to injury or sickness, is "unable to perform the important duties of [his] occupation…[and is] under the regular and personal care of a physician" (Doc. 72, Ex. B). Defendants completed a medical billing record/CPT code analysis "to assess the scope of Dr. Natarajan's practice both prior to and since the onset date of [his] disability" (Doc. 152, Ex. 28). Based upon that analysis, Defendants concluded that surgical (invasive/interventional) procedures accounted for only 12% of the total number of procedures performed by the Plaintiff and accounted for only 25% of all billing charges prior to the onset of disability (Doc. 143, Ex. 9-A). According to Defendants' claims investigator, the CPT Code analysis grouped the procedures performed by Plaintiff into surgeries and office consultations without considering those office visits that were associated with and intricately intertwined with Plaintiff's surgical procedures (for example, initial consultations and obtaining of informed consent, and post-operative office visits) (Doc. 144, Ex. 2).

Relying primarily on the CPT Code analysis, Defendants determined that Plaintiff was not engaged in the specialty of invasive/interventional cardiology at the time of his disability.

Instead, Defendants concluded that Plaintiff was instead a general cardiologist with expanded knowledge and experience in the specialty of invasive/interventional cardiology (Doc. 152). Based upon that conclusion and the fact that Plaintiff continued to maintain an (albeit limited) office practice, Defendants denied Plaintiff's claim for total disability benefits on May 8, 2003, and instead suggested Plaintiff seek benefits under the residual disability provision of the policy (Doc. 143, Ex. 10).

Plaintiff appealed Defendants' decision to deny his claim for disability benefits, and on March 11, 2004, citing largely the same evidence it had used as the basis to deny Plaintiff's initial claim for total disability benefits, in addition to a claimed lack of any additional "substantive data" to support the contention that Plaintiff was in fact totally disabled (Doc. 152 Ex. 28), Defendants again denied the claim. Plaintiff subsequently filed suit in this Court on December 1, 2004 (Doc. 1). That same month, Defendants entered into a regulatory agreement with Attorneys General of forty-eight states and the District of Columbia, by which Defendants agreed to reassess all claims terminated or denied between January 1, 2000 and January 20, 2005 (Doc. 152, Ex. 30). This Court subsequently stayed this litigation in order for the Plaintiff to enter the voluntary reassessment program (Doc. 17). On June 8, 2007, Defendants completed the reassessment of Plaintiff's claim and upheld the initial denial of total disability benefits (Doc. 143, Ex. 23). Citing the CPT Code Analysis in addition to the fact that Plaintiff had not provided the additional substantive data to refute the initial determination, as Defendants had requested in their initial response to Plaintiff's first appeal, Defendants denied the claim for total disability benefits and offered to consider Plaintiff's eligibility for partial or residual disability benefits (Doc. 143, Ex. 23).

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 249 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317,323-324 (1986). That burden can be discharged if the moving party can show the Court that there is "an absence of evidence to support the nonmoving party's case." *Id.* at 323, 325. When the moving party has met this initial burden, the nonmoving party must then designate specific facts showing that there exists some genuine issue of material fact in order to defeat summary judgment. *Id.* at 324. In ruling on state-law claims, such as the insurance dispute at issue in the case at bar, the Court must follow state—that is, Florida—law. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938) (citing *Balt. & Ohio R.R. Co. v. Baugh*, 149 U.S. 368, 401 (1893)).

Issues of fact are "genuine" only if a reasonable jury, considering the evidence presented, could find for the nonmoving party. *Anderson*, 477 U.S. at 249. Material facts are those that will affect the outcome of the trial under governing law. *Id* at 248; *Hickson Corp. v. Crossarm Co*., 357 F.3d 1256, 1259-60 (11th Cir. 2004). In determining whether a material issue of fact exists, the court must consider all evidence in the light most favorable to the nonmoving party. *Sweat v. Miller Brewing Co*., 708 F.2d 655 (11th Cir. 1983). If the determination of the case rests on which competing version of the facts or events is true, the case should be submitted to the trier of

fact and the motion for summary judgment denied. *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1531 (11th Cir. 1987). The weighing of evidence and the consideration of the credibility thereof are issues of fact to be determined by the jury at trial. *See Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1299 (11th Cir. 1983).

<u>DISCUSSION</u>

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**1. Count One: Breach of Contract**

Defendants essentially argue that there is no material issue of fact as to Plaintiff's occupation because he was at all pertinent times a general cardiologist performing some invasive procedures (Doc. 143). According to Defendants, then, because Plaintiff continues to maintain an office practice, he is still able to perform the important duties of his occupation (i.e., a general cardiologist) and he is, therefore, ineligible for total disability benefits (Doc. 143).

In the State of Florida, all ambiguities in insurance contracts are construed in favor of the insured. *Deni Assocs. of Fla. v. State Farm Fire & Cas. Ins. Co.*, 711 So. 2d 1135, 1140 (Fla. 1998). Further, an insurance policy "is to be construed liberally in favor of the insured and strictly against the insurer," *Berkshire Life Ins. Co. v. Adelberg*, 698 So. 2d 828, 830 (Fla. 1997). Further still, "insuring or coverage clauses are construed in the broadest possible manner to effect the greatest extent of coverage." *Westmoreland v. Lumbermens Mut. Cas. Co.*, 704 So. 2d 176, 179 (Fla. 4th Dist. App. 1997) (citing *Hudson v. Prudential Prop. & Cas. Ins. Co.*, 450 So. 2d 565, 568 (Fla. 2d Dist. App. 1984). Nonetheless, the interpretation of a contract is generally a matter of law to be determined by the Court, and a court should not rewrite the terms of any contract. *DEC Elec., Inc. v Raphael Constr. Corp.*, 558 So. 2d 427, 428 (Fla. 1990). That said,

once the terms of a contract are settled or if those terms are unambiguous to begin with, factual issues as to the parties' intent or what actually occurred between the parties cannot be decided on summary judgment and must be left to the factfinder. *Universal Underwriters Ins. Co. v. Steve Hull Chevrolet, Inc.*, 513 So. 2d 218, 219 (Fla. 1st Dist. App. 1987). What is more, when terms of a contract are unambiguous, the Court will "apply the facts of [a given] case and determine if there are any disputed issues which would preclude granting the requested summary judgment." *McCluney v. Gen. Am. Life. Ins. Co.*, 1 F. Supp. 2d 1347, 1353 (M.D. Fla. 1998).

The policy in question in this case clearly defines "Total Disability" as occurring when the insured, because of injury of sickness, is unable to perform the important duties of "Your Occupation" (Doc. 143, Ex. 1B). The policy clearly defines "Your Occupation" as "the occupation in which [the insured is] regularly engaged at the time [the insured] becomes disabled" (Doc. 143, Ex. 1B). Defendants' Motion for Summary Judgment (Doc. 143) and Plaintiff's Response thereto (Doc. 152) clearly demonstrate that there is no dispute as to the meaning of the terms "Your Occupation" or "Total Disability." Rather, the terms are unambiguous and the parties merely dispute their application—namely, what exactly the Plaintiff's occupation was at the time he was disabled. In order the defeat summary judgment, then, the Plaintiff must demonstrate that there exists evidence outside the pleadings by which a reasonable jury might find he was employed as an interventional/invasive cardiologist (as opposed to a general cardiologist) at the time he became disabled. *Anderson*, 477 U.S. at 249. While the Court must "draw inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor," *Specialty Malls of Tampa v. City of Tampa*, 916 F. Supp. 1222 (M.D. Fla. 1996), the Court is not required to deny summary

judgment in the case that such inferences are "implausible." *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996).

In the instant case, Plaintiff offers considerable evidence as to his occupation at the time of his disability. As Plaintiff adroitly points out, this Court deemed admitted Plaintiff's Request for Admission #19, that "Plaintiff was a board certified Interventional Cardiologist in 2002" (Doc. 151). Moreover, the Affidavit of Geoffrey Simon (Doc. 160), the administrator of Intercoastal Medical Group, the facility at which Plaintiff is employed, tends to support Plaintiff's interpretation of his occupation at the time of disability. The affidavit states that Plaintiff was an interventional cardiologist between 2000 and 2002 and was specifically hired because he was such a specialist (Doc. 160). In addition, Plaintiff offers depositions (Doc. 144, Ex. 8-9), his certificate of Board Certification in Interventional Cardiology (Doc. 144, Ex. 10), the Resolution of Sarasota Memorial Health Care System (Doc. 152, Ex. 1), and various other exhibits (Doc. 152, Ex. 2-6), all of which constitute evidence outside the pleadings by which a reasonable jury could conclude that Plaintiff was an interventional cardiologist at the time of his disability. Considering that Defendants' own claims manual states that "Florida…ha[s] adopted a more narrow definition of 'own occupation,'" (Doc. 152, Ex. 8), there is undeniably an issue of fact as to what Plaintiff's occupation actually was at the time of his injury. There is also ample evidence to support Plaintiff's assertion that, due to his disability, he is no longer able to manipulate his thumbs and perform interventional cardiology procedures (Doc. 144, Ex. 2, 19, 25). Therefore, Plaintiff has offered evidence by which a reasonable jury could find that Plaintiff was an interventional or invasive cardiologist at the time of his disability, that he is no longer able to perform interventional or invasive cardiology, that he was entitled to total disability

benefits, and that Defendants breached the insurance policy contract when they failed to pay total benefits associated with his claim.

Defendants also argue that, due to the CPT analysis they performed when assessing Plaintiff's claim, there exists no genuine issue of material fact as to Plaintiff's occupation at the time of his disability or his ability to perform the important duties of his occupation after the disabling injury (Doc. 143). However, it is a well-settled principle of law that issues of credibility and the weighing of evidence (such as the CPT analysis versus the depositions and affidavits submitted by Plaintiff) are issues for the trier of fact and that, if such weighing of evidence is necessary, that fact alone is sufficient to preclude summary judgment. *See e.g. Rollins*, 833 F.2d at 1531. Because Plaintiff has met his *Celotex* burden with regard to Count One of the Second Amended Complaint (Doc. 72), this Court must deny Defendants' Motion for Summary Judgment as to Count One, breach of contract.

**2. Counts Two Through Six: Fraud**

Plaintiff alleges various counts of fraud, essentially arguing that Defendants and their agents induced him to continue paying premiums and purchasing more and more own-occupation disability insurance when Defendants had no intention of honoring the payment provisions of the very policies they were selling (Doc. 72). There is sufficient evidence to create triable issues of fact with regard to the fraud claims, and Defendants' Motion for Summary Judgment with regard to the fraud count must therefore be denied.

The movant in a summary judgment proceeding must identify those areas of the record where the non-moving party has failed to adduce evidence of a required element of his or her prima facie case: "Of course, a party seeking summary judgment always bears the initial

responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) (citing Fed. R. Civ. P. 56(c)). That is not the say that Defendants must have *negated* Plaintiff's claim in order to win summary judgment, but they must at least inform the court as to the basis for their motion.

Defendants assert in their Motion for Summary Judgment (Doc. 143) that they are entitled to summary judgment essentially because: (1) the underlying claims decision was correct and there was no breach of contract, let alone fraud; (2) that Plaintiff's fraud claims are barred by the merger clause of the disability policy at issue (Doc. 143, Ex. 1B) and Plaintiff relies on inadmissible hearsay in his response to Defendants' Motion for Summary Judgment; (3) that Plaintiff has failed to show separate fraud damages distinct from the damages sought under the breach of contract action (Count One); and finally (4) that the Plaintiff has failed to prove fraud as to the reassessment process, which is Count Six of the Second Amended Complaint (Doc. 72).

In responding to Defendants' Motion for Summary Judgment (Doc. 143), Plaintiff cites his own affidavit (Doc. 152, Ex. 3) and that of Defendants' agent who sold Plaintiff the policy at issue in the instant litigation (Doc. 152, Ex. 12). Further, Plaintiff offers Defendants' claims manual and company guidelines for evaluating the occupation of the insured in own-occupation disability policies (Doc. 152, Ex. 8-9), documents that specifically outline Defendants' plan to construe the term "Your occupation" narrowly for those policies centered in Florida. Finally, Plaintiff has introduced evidence that in the early- to mid-1990's, Defendants overzealously sold own-occupation disability policies that, as it would turn out, were underwritten without regard to

12

the actual financial risks involved (Doc. 152, Ex. 13). Based upon this evidence, a jury might reasonably find that Defendants materially misrepresented the nature and quality of own-occupation disability insurance policies such as that they sold to the Plaintiff and that they might have also misrepresented their willingness to evaluate said policies objectively or pay benefits pursuant to the actual policy-terms.

Defendants argue that the merger clause (provision 10.1 of the policy, at Doc. 143, Ex. 1B) of the insurance policy precludes the contestability of the contract with regard to the fraud and RICO claims. However, a merger clause will not categorically preclude the consideration of extraneous evidence of fraud in the inducement, except where the statements alleging fraudulent inducement are explicitly contradictory to a specific and unambiguous provision of the contract. *Wilson v. Equal. Life Assurance Co.*, 622 So. 2d 25, 27 Fla. 2d Dist. App. 1993); *see White Constr. Co. v. Martin Marietta Materials, Inc.*, 633 F. Supp. 2d 1302, 1327 (M.D. Fla. 2009); *see also Worsham v. Provident Cos., Inc.*, 249 F. Supp. 2d 1325, 1331 (N.D. Ga. 2003).

Defendants also rely heavily throughout their Motion for Summary with regard to the fraud counts on this Court's discussion of hearsay evidence in *Sterling v. Provident Life & Accident Ins. Co.* 619 F. Supp. 2d. 1242, 1259 (M.D. Fla. 2009). According to Defendants, the California Department of Insurance Market Conduct Examination of Defendants' claim practices (Doc. 152, Ex. 14) is inadmissible hearsay, as are the factual determinations regarding Defendants' practices contained in the published decisions of other courts. Because Defendants' Motion for Summary Judgment as to the fraud counts fails based upon the foregoing discussion without need for this evidence, however, this Court need not decide Defendants' evidentiary arguments at this juncture.

13

Defendants further argue that damages stemming from the alleged fraud counts must be distinct from those damages sought under the breach of contract claim. *AFM Corp. v. Southern Bell Tel. & Tel. Co.*, 515 So. 2d. 180, 181 (Fla. 1987), *overruled*, *Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 891 So. 2d 532, 537 (Fla. 2004); *Conn. Gen. Life Ins. Co. v. Jones*, 764 So. 2d 677, 690 (Fla. 1st Dist. App. 2000). It is indeed well-settled that actual damages are an element of an action for fraud in Florida. *Casey v.* Welch, 50 So. 2d 124, 125 (Fla. 1951); *Simon v. Celebration Co.*, 883 So. 2d 826, 833 (Fla. 4th Dist. App. 2004). In order to succeed on his fraud claims at trial, then, Plaintiff must prove pecuniary damages stemming from his detrimental reliance on a material misrepresentation made by Defendants. *Ragsdale v. Mt. Sinai Med. Ctr.*, 770 So. 2d 167, 169 (Fla. 3d Dist. App. 2000). In the instant case, Plaintiff prays for damages in addition to his expectation interest under the insurance policy (i.e. the payment of benefits), including the premiums he has paid Defendants in the past, reasonable attorneys' fees, and punitive damages (Doc. 72).

The judge-made economic loss rule, as it is called, requires that tort claims be based upon actions committed independently from those that support the breach of contract claim. *Indem. Ins.*, 891 So. 2d at 527. In order to recover on Plaintiff's fraudulent inducement claim at trial, then, Plaintiff must prove facts separate and distinct from Defendants' alleged breach of the insurance policy contract. *Id.* (citing *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So. 2d 1238, 1239 (Fla. 1996)). Because Plaintiff's breach of contract claim is based upon Defendants' failure to pay benefits under the policy and Plaintiff's fraud claims are based upon the inducement of him to continue paying premiums for policy upon which benefits would not be paid out, Plaintiff's fraud claim is premised upon facts separate and distinct from the actions

14

upon which the breach of contract claim is predicated. Therefore, the economic loss rule does not bar Plaintiff's fraud claims.

Defendants also seek summary judgment as to Count Six of the Second Amended Complaint (Doc. 72), alleging fraud as to the reassessment process (Doc. 143). Defendants essentially argue that Plaintiff's fraud claim regarding the reassessment process alleges only that the process took too long, and that such a claim fails because the Plaintiff cannot show that Defendants' conduct was fraudulent or that Plaintiff was damaged by the delays.

Under Florida law, the essential elements of a fraud claim are: "(1) a false statement concerning a specific material fact; (2) the maker's knowledge that the representation is false; (3) an intention the representation will induce another's reliance; and (4) consequent injury by the other party in reliance on the representation." *Wadlington v. Continental Med. Servs., Inc.*, 907 So. 2d 631, 632 (Fla. 4th Dist. App. 2005); *Stowell v. Ted S. Finkel Inv. Servs. Inc.*, 641 F.2d 323, 325 (5th Cir. 1981). Defendants' Motion for Summary Judgment fails to show what exactly is lacking from Plaintiff's allegations other than to say that Defendants' conduct never "rose to the level of fraudulent activity" and that Plaintiff has failed to properly specify damages (Doc. 143, p. 30). Generally, the issue of fraud is not properly the subject of summary judgment, because a court can seldom determine the presence or absence of fraud without a trial. *Robinson v. Kalmanson*, 882 So. 2d 1086, 1088 (Fla. 5th Dist. App. 2004) (citing *Amazon v. Davidson*, 390 So. 2d 383, 385 (Fla. 5th Dist. App. 1980)). The reason for this is that "questions of … misrepresentation, intent, knowledge, and reliance all turn on factual determinations, which are often based on circumstantial evidence." *State Farm Mut. Auto. Ins. Co. v. Weiss*, 410 F. Supp. 2d 1146, 1148 (M.D. Fla. 2006) (citing *Cohen v. Kravit Estate Buyers, Inc.*, 843 So. 2d 989, 991

(Fla. 4th Dist. App. 2003)).

In the Multi-State Regulatory Agreement that Defendants signed, they agreed to reexamine Plaintiff's claim for total disability benefits, and to focus on any "faulty or overly restrictive interpretation[s] or application[s] of policy provisions, including the definition of 'occupation' in 'own occupation policies'" (Doc. 152, Ex. 30). Plaintiff has adduced evidence, however, that despite having signed the agreement, Defendants made no effort to retrain their claim analysts. In fact, the very employee who conducted the re-assessment process admits that the decision to uphold the initial denial of benefits was based on the very CPT analysis method to which Plaintiff had initially objected (Doc. 144, Ex. 34). In upholding the denial of benefits under the Claims Reassessment Process (an endeavor Defendants had agreed to complete under threat of litigation from the Attorneys General of forty-eight states and the District of Columbia (Doc. 152, Ex. 30)), Defendants cited the need for more even medical and financial information (Doc. 143, Ex. 23). However, given that Defendants had taken over two and a half years to complete their reassessment (which essentially consisted of rehashing the same processes they had completed in denying Plaintiff's claim the first time), the admission of such redundancy in the process after the signing of the Regulatory Agreement, in light of the low burden for defeating summary judgment as to fraud, demonstrates that there is at least an issue of fact relating to Defendants' intent in conducting the reassessment process. If such intent were present, it would likely be actionable fraud, given that payment of the policy benefits was again denied and that Plaintiff accordingly was forced to reopen his theretofore stayed litigation. (Doc. 152). Given that there is a material issue of fact as to the Defendants' intent, not only in the reassessment process, but indeed throughout the claims process, Defendants have failed to meet

16

their summary judgment burden and Defendants' Motion for Summary Judgment (Doc. 143) must therefore be denied.[1]  *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994).

### 3.  Counts Seven Through Nine: RICO

Plaintiff argues that Defendants intentionally denied otherwise valid own-occupation disability insurance claims in order to increase profit and that in doing so Defendants carried out a racketeering scheme in violation of in 18 U.S.C. § 1512, 18 U.S.C. § 1961(a), and 18 U.S.C. §§ 1961 and 1962(b) (Doc. 72).  Defendants counter, arguing that summary judgment is proper because: 1) Plaintiff has not established the requisite mens rea to support the RICO counts; 2) Plaintiff has failed to establish a pattern of racketeering; 3) Plaintiff has failed to show causation as to damages with regard to the RICO counts; and (4) that Plaintiff has failed to make an adequate showing as to the alleged violation of 18 U.S.C. § 1512.

To prevail on a civil RICO claim, a plaintiff must meet the high burden of showing: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a pattern (4) of racketeering activity (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an enterprise (7) the activities of which affect interstate or foreign commerce. *McCulloch v. PNC Bank, Inc.*, 298 F.3d 1217, 1225 (11th Cir. 2002).  A plaintiff relying on violations of mail fraud as predicate acts for civil RICO claims must show that he suffered injury as a result of those violations—namely, that the violations proximately caused his damages. *Pelletier v. Zweifel*, 921 F.2d 1465, 1499 (11th Cir. 1991).  Finally, a plaintiff in a civil racketeering claim "must prove that he was a target of the scheme to defraud and that he relied to

---

[1]If a jury does indeed find that Plaintiff has met the high burden of showing actionable fraud, attorneys' fees might be appropriate.  *Cook v. Deltona Corp.*, 753 F.2d 1552, 1564 (11th Cir. 1985).  Defendants' motion for summary judgment as to attorneys' fees is therefore denied.

his detriment on misrepresentations made in furtherance of that scheme." *Sikes v. Teleline, Inc.* 281 F. 3d 1350, 1360 (11th Cir. 2002).

Defendants' first assertion in support of summary judgment is that Plaintiff has failed to make a showing of intent sufficient to defeat summary judgment (Doc. 143). Keeping in mind that intent is generally an issue to be decided by the factfinder, often based upon circumstantial evidence, Plaintiff has provided certain evidence that could demonstrate the existence of sufficient mens rea to defeat summary judgment. First, the depositions of John Clarke and David Keenan (Doc. 144, Ex. 12, 3) demonstrate that Defendants could have known they were relying on a method of evaluating claims (CPT Code Analysis) that, at the very least, was worthy of scrutiny. When Defendants reviewed Plaintiff's appeal and again reviewed his file during the reassessment process (which itself resulted from a Regulatory Agreement, presumably entered into in lieu of litigation), Defendants again relied largely on the CPT Code analysis. Defendants' own claims manual and (Doc. 152, Ex. 9) and Occupation Evaluation Guidelines (Doc. 152, Ex. 8) demonstrate that Defendants' knew of their obligation to properly evaluate the claim and not rely solely on one basis for making a determination to deny benefits to the insured.

The foregoing evidence *could* plausibly show that Defendants, despite having signed a Regulatory Agreement, proceeded with the intent to single out high-reserve own-occupation disability insurance policies for termination, and that Plaintiff's claim was a casualty of such behavior. Whether such acts meet the standard of a "'conscious knowing intent to defraud,'" *U.S. v. Kreimer*, 609 F.2d 126, 128 (5th Cir. 1980) (quoting *U.S. v. Kyle*, 257 F.2d 559, 564 (2d Cir. 1958), however, is a question to be properly decided by a jury. At trial, Plaintiff will have the opportunity to meet the high burden of showing intent, and Defendants will have the

opportunity to counter by showing they lacked the requisite intent or, better yet, the honesty and propriety of the means by which they assessed Plaintiff's claim during the appeal and reassessment process. Defendants' contention that Plaintiff has failed to proffer sufficient evidence of intent to survive summary judgment must therefore fail.

Defendants next contend that the Plaintiff has failed to establish a pattern of racketeering activity. However, as noted above, the requirement in civil RICO cases is merely that there be a minimum of two or more acts sufficient to constitute a pattern of behavior. *McCulloch*, 298 F.3d at 1225. Defendants note that the "two act" requirement is merely a minimum and that two acts can nonetheless be insufficient to constitute what in common parlance is considered a pattern of behavior. *Sedmia v. Imrex Co., Inc.*, 473 U.S. 496 (1985). As difficult as it may be to prove at trial, if Plaintiff's other allegations as to the RICO counts are proved, then proving a pattern of racketeering activity in the extant case with not pose a bar to Plaintiff's claim because each individual instance of using the mails in furtherance of a scheme to defraud the Plaintiff is plausibly a separate racketeering act. *See Water Int'l Network v. East*, 892 F. Supp. 1477, 1482 (M.D. Fla. 1995). Plaintiff has therefore adequately shown that, if all factual inferences are made in his favor, a jury could reasonably find that the number of unlawful acts, the length of time over which the acts were committed, the similarity of the acts, the number of victims, the number of perpetrators, and the character of the unlawful activity, are all sufficient to constitute a pattern of racketeering activity. *Barticheck v. Fidelity Union Bank/First National State*, 826 F.2d 36, 38-39 (3d Cir. 1987). While a jury might reasonably conclude that some of the instances in which Defendants communicated with Plaintiff by mail were not RICO violations, Plaintiff need only show two or more acts of racketeering in order to meet the minimum burden

for a civil RICO claim. *Outlet Communications, Inc. v. King World Productions, Inc.*, 685 F. Supp. 1570, 1580 (M.D. Fla. 1988). Based upon the evidence provided thus far, Plaintiff has carried his burden in this regard.

Defendants also contend that Plaintiff has failed to show their alleged racketeering activities formed the proximate cause of Plaintiff's damages (Doc. 143). Defendants rely on *Transpetrol, Ltd. v. Radulovic*, 764 So. 2d 878, 881 (Fla. 4th Dist. App. 2000), and on *Beck v. Prupis*, 162 F.3d 1090, 1095 (11th Cir. 1998), in order to show that Plaintiff's damages were not proximately caused by Defendants' activities. The facts of *Beck* are distinguishable from those of the instant case, however. In *Beck*, the connection between the allegedly fraudulent activity and Beck's losses were based upon attenuated financial decisions. Here, Defendants' representations that they would honor Plaintiff's claim even if he was still able to maintain a general office practice were indeed a "substantial factor" in Plaintiff's decision-making, as evidenced by Plaintiff requesting and receiving a clarification letter as to that exact provision of the policy early in 1987 (Doc. 144, Ex. 4). *Beck*, 162 F.3d at 1095. Whereas in Beck it was uncertain whether the plaintiff would have made the same financial decisions had he known about the illegal activities of the company, here it is at least somewhat clear that Plaintiff would not have purchased and continued to pay expensive premiums on these policies had he known that Defendants had paradigmatically changed their approach to the payment of claims.

Therefore, even apart from Defendants' "puffing" that their policy was the "Mercedes Benz" of disability policies (Doc. 72), the totality of the evidence demonstrates that there are factual issues as to Plaintiff's damages sufficient to defeat summary judgment. If Plaintiff's allegations as to Defendants' fraudulent scheme are true, then it is unremarkable that

Defendants' actions could have proximately caused Plaintiff's alleged injuries.

Lastly, Defendants argue that Plaintiff has advanced no evidence to suggest that Defendants have violated 18 U.S.C. § 1512, which requires witness tampering, destruction of documents, or some other qualifying act enumerated in the statute. "Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 417 U.S. at 323. However, once the moving party has indicated the basis for its motion, Federal Rule of Civil Procedure 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. Defendants' Motion for Summary Judgment (Doc. 143) specifically notes that Count Seven of Plaintiff's Second Amended Complaint (Doc. 72) is based upon "speculation and conjecture" and is unsupported by evidence outside the pleadings. Because Plaintiff's Response to Defendants' Motion for Summary Judgment (Doc. 152) fails to in any way address the arguments made by Defendants as to Count Seven (violation of 18 U.S.C. § 1512), Plaintiff has failed to meet the Rule 56(e) standard necessary to defeat the motion, and this Court must grant Defendants' Motion for Summary Judgment as it relates to that individual count.

As they did in moving for summary judgment as to fraud, Defendants allege that

Plaintiff's RICO claims are based on "inadmissible hearsay" (Doc. 143, p. 23).  Because

Defendants' Motion for Summary Judgment as to the remaining RICO counts fails without need

for this evidence, however, this Court need not decide such evidentiary questions at this time.

As all other arguments advanced by Defendants are lacking in merit, this Court must deny the

Motion for Summary Judgment (Doc. 143) as to all counts except Count Seven, the alleged

violation of 18 U.S.C. § 1512.

### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO COUNT ONE

Plaintiff's argument in moving for summary judgment is essentially the opposite of that

made by Defendants in their Motion for Summary Judgment (Doc. 143) and discussed above.

The crux of Plaintiff's position is that there is no material issue of fact as to what Plaintiff's

occupation was the time of his disability, that he is undisputedly entitled to total disability

benefits, and that judgment as to Count One, breach of contract, should therefore be entered on

his behalf as a matter of law (Doc. 144).

In support of his Motion for Summary Judgment, Plaintiff offers various evidence,

including the deposition of Defendants' claims handler and Rule 30(b)(6) witness, Mark Doyle

(Doc. 144, Ex. 2), who deposed to a definition of interventional cardiology in keeping with that

asserted by Plaintiff.  Plaintiff also offers the deposition of Defendants' senior vocational

consultant, Mary Cloutier (Doc. 144, Ex. 11), who testified to the same effect, as well as the

depositions Defendants' in-house cardiologists (Doc. 144, Ex. 12, 13), both of whom deposed

that angioplasties and similar interventional procedures are the important duties of an

interventional cardiologist.  Plaintiff has also provided evidence of the average number of annual

interventional procedures customarily required in order to be classified as an interventional

cardiologist (Doc. 144, Ex. 15, 17), and has similarly provided evidence that Plaintiff performed

well over that number in the years up to and including 2001.   While Plaintiff contends that the

statement of his attending physician is dispositive in proving the timeframe for which disability

should be considered (Doc. 144, Ex. 24), summary judgment in this case actually turns on what

exactly Plaintiff's occupation was at the time of his disability and whether Plaintiff still remained

able to perform the "important duties of [his] occupation" (Doc. 153, Ex. 18-A) after he became

disabled.  Plaintiff cannot rely on the Affidavit of Geoffrey G. Simon as filed in support of

Plaintiff's Motion for Summary Judgment (Doc. 159), because this Court, by order dated June 1,

2010, (Doc. 162) granted Defendants' Motion to Strike the Simon Affidavit as filed in support

the extant motion.

Defendants of course argue that the CPT analyses performed by their experts, Lubin

(Doc. 153, Ex. 1) and Smith (Doc. 153, Ex. 5), create an issue of material fact as to what

Plaintiff's occupation was at the time of his disability and whether he became totally disabled as

the result of his injury.  As noted in the above discussion denying Defendant's Motion for

Summary Judgment as to the breach of contract claim, the weighing of evidence, such as the

probative value of the CPT analysis against that of Plaintiff's depositions and affidavits, is itself

a function for the jury and a sufficient reason to require the denial of a motion for summary

judgment.  *Warrior Tombigbee*, 695 F.2d at 1299.  For these reasons, and for the reasons

discussed in analyzing Defendants' summary judgment claim, it is clear that whether Plaintiff is

totally disabled, and unable to perform the important duties of his occupation, is very much a

factual dispute.  This Court must therefore deny Plaintiff's Motion for Summary Judgment as to

Count One and allow these issues of fact to be resolved by a factfinder at trial.  Accordingly, it is

**ORDERED** that Defendants' Motion for Summary Judgment (Doc. 143) is **GRANTED IN PART**, as to Count Seven of the Second Amended Complain, and **DENIED IN PART**, as to all other counts; and that Plaintiff's Motion for Summary Judgment as to Count One (Doc. 144) is **DENIED**. This case is now ready for trial and trial shall be set as soon as practiceable.

**DONE AND ORDERED** in Chambers, in Tampa, Florida this 18th of June, 2010

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to: All parties and counsel of record.